

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

M.W. WIDOFF, P.C. AND D.M. )
ROBINSON CHIROPRACTIC, S.C., )
individually and on behalf of all others )
similarly situated, )
 )
    Plaintiffs, )
 ) Case No. 10 C 8159
    v. )
 ) The Honorable William J. Hibbler
ENCOMPASS INSURANCE COMPANY OF )
AMERICA, ALLSTATE INSURANCE )
COMPANY, AND MITCHELL INTERNATIONAL, )
INC., )
 )
    Defendants. )
 )

## MEMORANDUM OPINION AND ORDER

Two chiropractic clinics sued Allstate Insurance Company and Encompass Insurance Company (collectively, Allstate[1] or the Insurance Defendants) for breach of contract, state consumer fraud act violations, and RICO violations. In addition, the Plaintiffs sued Mitchell International, Inc. for RICO violations. The Defendants move to dismiss Plaintiffs' claims.

### I. Factual Background

The Plaintiffs allege that Allstate employed a fraudulent scheme to depress reimbursements for medical treatment to its policyholders. Allstate contracted with Mitchell to use its "Decision Point" software in making its fee determinations. According the Plaintiffs, Decision Point uses the

---

[1] Allstate Insurance Company and Encompass Insurance Company are subsidiaries of the Allstate Corporation.

1

Ingenix database, which has been compiled with fraudulent data. Among other things, the Plaintiffs allege that the Ingenix data has been corrupted by conflicts of interest of those compiling the data, selective data contribution, use of flawed algorithms, and use of data scrubbing techniques.

The Insurance Defendants' policies required them to pay reasonable expenses. The policies define unreasonable expenses as those "which are substantially higher than the usual and customary charges for those services." The policies do not, however, define "substantially higher" or "usual and customary charges."

The Insurance Defendants used the Decision Point software supplied by Mitchell to determine what constituted a "reasonable expense." According to the Plaintiffs, the Insurance Defendants compared line-item charges billed for a medical procedure to internal fee schedules embedded in the Ingenix database. If the line-item charge exceeded a certain percentile payment benchmark, then the Insurance Defendants deemed it unreasonable and declined payment on the charged amount that exceeded the payment benchmark. The policies of the Insurance Defendants provide no statistical definition of unreasonableness and the Insurance Defendants do not disclose the percentile benchmark at which they deem the charge to be unreasonable.

According to the Plaintiffs, the Insurance Defendants' reliance on the allegedly corrupt Ingenix database and the use of undisclosed percentile benchmarks to determine reasonableness results in a routine and systematic denial of coverage of reasonable medical expenses. These coverage denials are identified by insurance Codes 41 and X41. The Plaintiffs allege that the Insurance Defendants denial of coverage and failure to make a good faith determination of

reasonableness breaches the contract between the Insurance Defendants' and their insured.[2] The Plaintiffs further allege that the sale of Decision Point software that utilizes the Ingenix database by Mitchell and the use of Decision Point software by the Insurance Defendants to deny coverage under Codes 41 and X41 constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961. Finally, the Plaintiffs allege that the Insurance Defendants' use of Decision Point is an unfair or deceptive business practice.

## II. Standard of Review

When reviewing a motion to dismiss, courts take all well-pleaded allegations of the complaint as true and view them in the light most favorable to the plaintiff. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). To satisfy the notice-pleading standard of Rule 8 of the Federal Rules of Civil Procedure, a complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8. Allegations of fraud, including those supporting a civil RICO claim, must be pleaded with particularity. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

Although a complaint need not plead specific facts outside of those pleading fraud, it must contain sufficient allegations to raise the right to relief above the speculative level and state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint does not suffice if it offer only "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. Rather, a claim has facial plausibility when it contains sufficient factual allegations that allow a court to draw a reasonable inference that the

---

[2] The Plaintiffs allege that the insureds have assigned their rights to their claims to the Plaintiffs.

defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173, L.Ed. 868 (2009).

### III. Analysis

*A.    Breach of Contract*

The Insurance Defendants first argue that the Plaintiffs lack standing to pursue any breach of contract claim because they are not parties to any contract with the Insurance Defendants. This argument warrants little discussion. The Plaintiffs plead that they are the assignees of policy holders of the Insurance Defendants. The Insurance Defendants suggest that Plaintiffs need to have alleged "specific claimant[s]"who assigned their interest to them, the details of the assignments, or even to have attached the alleged assignments to the complaint. Nothing in Rule 8, however, requires a Plaintiff to submit evidence in support of their complaint. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) (noting that litigants are entitled to discovery before being put to their proof). Nor does notice pleading require anything other than a short and plain statement showing that the pleader is entitled to relief. Nor does it require a plaintiff to set forth all the details of their proof. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 559-560 (7th Cir. 2010) (holding that failure to identify which federal regulations defendant violated did not violate Rule 8). The Insurance Defendants argument to the contrary would lead to long-winded, prolix complaints that thwart the purposes of Rule 8 and is without merit.[3]

The Insurance Defendants also argue that the Plaintiffs' breach of contract claim fails because "it turns on the theory that . . . the use of computerized medical bill review programs to adjust claims

---

[3] The Insurance Defendants also argue that Widoff lacks standing because he has alleged no facts showing that his patients suffered an injury. This argument is frivolous and the Insurance Defendants seem to have abandoned it in their reply.

4

[is] improper" and the Plaintiffs fail to identify anything in the policy that would prevent the use of such programs. To recover on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Van Der Molen v. Washington Mut. Fin., Inc.*, 359 Ill. App. 3d 813, 823, 835 N.E.2d 61 (2005).

In support, the Insurance Defendants rely on an unpublished Third Circuit case. *See St. Louis Park Chiropractic, P.A. v. Federal Ins. Co.*, 342 Fed. Appx. 809, 813-14 (3d. Cir. 2009). Even if *St. Louis Park Chiropractic* constituted binding precedent in this circuit, which it does not, it has little persuasive value. In that case, the court held that "the gravamen of Appellants' claim is that Appellees use of computerized auditing *itself* violated the insurance contracts." *Id.* at 813 (emphasis in original). Indeed, the plaintiffs in that case explicitly stated that they were not challenging the individual determinations of reasonableness, but rather the "*uniform process that the Insurers apply to all claims.*" *Id.* at 814 (emphasis in original).[4]

In this case, the Plaintiffs do not claim that the use of computerized databases to pay medical claims is a *per se* breach of the insurance policies. Rather, they allege that the Insurance Defendants breached their obligation to pay "reasonable medical expenses" and that the use of a flawed and corrupt database to calculate "reasonable medical expenses" did so on a systemic basis. The Insurance Defendants arguments that the Plaintiffs have not adequately pleaded that they have

---

[4]The Insurance Defendants also point to *State Farm Mut. Auto. Ins. Co. v. Sestile*, 821 So.2d 1244, 1246 (Fla. Dist. Ct. App. 2002). That case, however, directly undermines the Insurance Defendants' argument. In *Sestile*, the court noted that a plaintiff could sue for breach of contract merely by alleging that a computer database does not accurately assess the reasonableness of a medical provider's bill. *Id.* The court held only that it would remain the plaintiff's burden to *prove* that the computer database did not accurately assess reasonableness. *Id.*

5

breached the contract is without merit. The Court DENIES the Insurance Defendants' Motion to Dismiss Count II of the Plaintiffs' Complaint.

### B. Consumer Fraud Claims

Under Illinois law[5], a "breach of a contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 835 N.E.2d 801, 844 (2005). Consumer fraud or deception must be something more than simply a failure to fulfill contractual obligations — for "'that type of 'misrepresentation' occurs every time a defendant breaches a contract.'" *Id.* (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312, 724 N.E.2d 988 (2000). Thus, as a matter of law, the Plaintiffs' Consumer Fraud Act claims must be based on something other than the Insurance Defendants' promise to pay reasonable expenses.

---

[5] One requirement of the Illinois Consumer Fraud Act is that the transaction at issue occur in Illinois. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 835 N.E.2d 801, 854 (2005). The parties do not dispute whether the transaction at issue with regard to Robinson Chiropractic's claims occurred in Illinois. However, they do dispute whether the transactions at issue with regard to Widoff's claims occurred in Illinois. The Complaint alleges that Widoff is an Arizona service corporation that is the assignee of patients covered by Encompass. It also alleges that the contracts signed by Widoff's patients were only made effective by the Defendants' countersignatures in Illinois. The Complaint makes no other allegations regarding Widoff's patients, the accidents that caused them to submit claims, or the claims process. While the place where a company policy is created is a relevant factor to consider in determining the location of a consumer transaction, it is not dispositive. *Avery*, 835 N.E.2d at 854. Rather, where the majority of circumstances — the location of policyholder's agent, the location of the policyholder's claims representative and adjustor, the location where the policyholder signed the policy, and the location where the accident that created the claim — occur outside of Illinois, the Illinios Supreme Court has held that the transaction occurred outside of Illinois and disallowed any claim under the Illinois Consumer Fraud Act. *Id.* Widoff points to no Arizona statute that would supply a basis for its claims and insists that it has alleged consumer transactions that occurred in Illinois. While it is certainly possible that the underlying events might support a basis to conclude that the transactions at issue in Widoff's claims occurred in Illinois, such a conclusion would be speculative based on the facts as pleaded. In any event, it matters not because the Court holds that the Plaintiffs have failed to state a claim under the Illinois Consumer Fraud Act.

Courts have allowed consumer fraud act claims that intersect with underlying contract claims where the plaintiff alleges that the defendant's misrepresentation induced the plaintiff to enter the contract. *See, e.g., Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 675 N.E.2d 584, 594-95 (1997); *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 844 N.E.2d 995, 998-99 (2006); *Perona v. Volkswagen of Am., Inc.*, 292 Ill. App. 3d 59, 684 N.E.2d 859 (1997). In these cases, the plaintiffs allege misrepresentations about the products themselves and not about any intent to honor a promise in the underlying contract. For example, in *Connick*, the plaintiff alleged that Suzuki represented to Car & Driver magazine that its engineers had "built extensive passenger protection" into its vehicles and concealed information about its vehicles' safety risks. *Connick*, 675 N.E.2d at 594-95. In *Pappas*, the plaintiffs alleged that Pella knew that its windows would allow water to enter and failed to disclose those facts to them but did not allege the breach of any promises related to warranties contained in any contract for the sale of those windows. *Pappas*, 844 N.E.2d at 999-1000.

In this case, the Plaintiffs do not allege a fraud related to the product itself. Rather, they allege the Defendants' concealment of their intent not to honor promises to pay reasonable expenses. Paragraph 44 of the Complaint is telling. In that paragraph, Plaintiffs allege that Defendants did not disclose "to their insureds or their providers that they are making 'unreasonable' charge determinations based upon a predetermined percentile of the flawed Ingenix database" and "that they are making determinations of 'unreasonable charges' without conducting an inquiry into whether a medical expense meets the definition of 'unreasonable.'" Later, in Paragraph 93, the Plaintiffs allege that the Defendants' "determination of 'unreasonable' medical expenses, through the use of Decision Point software . . . is a deceptive trade practice. The crux of the Plaintiffs' Complaint is thus that the Defendants promised to pay reasonable medical expenses and then failed

7

to do so. The fraud, misrepresentation, or concealment alleged by the Plaintiffs concerns only the alleged means employed by the Defendants to avoid keeping their promises.

In this regard, the Plaintiffs' Consumer Fraud Act claims are like that of the plaintiff in *Avery*. In *Avery*, the plaintiff alleged that the defendant breached its contract by failing to use parts of "like kind and quality," and pointed to a specific promise in the policy. *Avery*, 835 N.E.2d at 848-49. The court held that as a matter of law the consumer fraud act claim could not be based on the contractual promise to restore vehicles to a "pre-loss condition" or to use parts of "like kind or quality." *Id.* at 844. The deceptive act must involve something more than the promise to do something and a corresponding failure to do it. *Id.*; *see also Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 832 N.E.2d 189, 196-97 (2005) (rejecting Consumer Fraud Act claim based on failure to "promptly" return escrow funds as promised in contract). Because the Plaintiffs' Consumer Fraud Act claims are nothing more than a naked breach of contract claim the Court holds that they have failed to state a claim on which relief may be granted. The Court GRANTS Defendants' Motion to Dismiss Count I of the Plaintiffs' Complaint.

C.   *RICO Claims*

Congress enacted RICO to combat the infiltration of organized crime and racketeering into legitimate organizations. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (citing S. Rep. No. 91-617). In addition to criminal enforcement of RICO's provisions, Congress provides civil RICO plaintiffs with the opportunity to recover treble damages, costs and attorney's fees if they can establish the elements of a RICO violation by a preponderance of the evidence. 18 U.S.C. § 1964(c). The elements of a violation of § 1962(c) of RICO consist of: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. 18 U.S.C. § 1962(c); *Midwest Grinding Co. v. Spitz*,

8

976 F.2d 1016, 1019 (7th Cir. 1992). The Plaintiffs' RICO claim is deficient in numerous accounts.

At the outset, the Plaintiffs have not sufficiently pleaded conduct on behalf of Mitchell. he RICO offense is *using* the enterprise to engage in a pattern of racketeering activity. *Jay E. Hayden Foundation v. First Neighbor Bank*, 610 F.3d 382, 389 (7th Cir. 2010). Thus, a plaintiff must plead that a defendant took some part in directing or conducting the alleged "enterprise" such that it "participate[d] in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 185. Tangential involvement in an enterprise is not sufficient and allegations that a party had a business relationship with the putative RICO enterprise do not suffice. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009).

When Plaintiffs' allegations are examined it is clear they do not allege any relationship between Mitchell and the Insurance Defendants other than a customer-supplier relationship. For example, in Paragraph 49, the Plaintiffs allege that Mitchell participated in the enterprise by selling its software to the Insurance Defendants, working with the Insurance Defendants to customize the software, and updating and licensing the software. Similarly, in Paragraph 54, the Plaintiffs allege that Mitchell customizes the software to the specifications of its customers, in this case the Insurance Defendants. Although the Plaintiffs plead that Mitchell was aware of Ingenix's flaws, they do not plead that Mitchell, in any way, participated in the operation or management of the enterprise itself. Simply performing services for an enterprise, even with knowledge of illicit activity, is not sufficient to submit an entity to RICO liability under § 1962(c). *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Because the Plaintiffs have alleged nothing more than a customer-supplier relationship between Mitchell and the Insurance Defendants and not that Mitchell took any part in controlling the enterprise, they have failed to plead sufficient facts to raise their right to relief

against Mitchell above the speculative level.

The Plaintiffs' allegations of the "enterprise" are also problematic. A RICO enterprise may be a legal entity or an extra-legal association in fact. *United States v. Turkette*, 452 U.S. 576, 583, 101, S.Ct. 2524, 69 L.Ed.2d 246 (1981). An enterprise is an "entity" or in other words "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* However, the RICO "enterprise" must be separate and distinct from the RICO "person." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 158-59, 121 S.Ct 2087, 150 L.Ed.2d 198 (2001). That is, a person or entity must use the enterprise to engage in a pattern of racketeering activity, and not merely a person conducting his own affairs through a pattern of racketeering activity. *Ashland Oil v. Arnett*, 875 F.2d 1271, 1280 (7th Cir. 1989).

To properly plead an association in fact, a plaintiff must allege that an organization, formal or informal, that functions as a continuing unit. *Turkette*, 452 U.S. at 583. Recently, the Supreme Court has identified the three structural features of an association in fact for which a plaintiff must provide sufficient factual allegations such that it is plausible to infer that the enterprise existed: (1) a purpose; (2) relationships among those associated with the enterprise; (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, ––, 129 S.Ct. 2237, 2244, 173 L.Ed.2d 1265 (2009). Nonetheless, an association in fact must have a structure. *Jay E. Hayden Foundation*, 610 F.3d at 388.

The Plaintiffs must point to an "enterprise," and not merely a RICO "person." In other words, it is not sufficient for the Plaintiffs to allege merely that the Insurance Defendants conducted their insurance business through a pattern of racketeering activity. Rather, they must allege some relationship or structure creating the "enterprise." *Boyle*, 129 S.Ct. at 2244. It would suffice to

allege that the Insurance Defendants and Mitchell acted in concert to fulfill a purpose perhaps to increase their profits by using the Ingenix database to defraud their customers. *See, e.g., Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 WL 1979569, at * 8 (N.D. Ill. May 17, 2010) (finding allegation that defendants worked together to implement fraudulent scheme recoup insurance payments could be a "purpose" of an enterprise). Similarly, it would suffice to allege that corrupt officials within the Insurance Defendants were banded together with a common purpose. *See, e.g., Jay E. Hayden Foundation*, 610 F.3d at 388 (noting that an enterprise can be a group of crooks within an organization that on the surface is legitimate).

In this case, Plaintiffs name a purported "Code 41 Enterprise," consisting of Mitchell and the Insurance Defendants acting for the purpose of using the Ingenix database to suppress insurance payments to the Insurance Defendants' customers. While the Plaintiffs' allegations plead a purpose of the association in fact, the problem for the Plaintiffs comes in alleging the relationships among those in the enterprise. Although *Boyle* makes clear that little more is necessary than a loosely organized consortium, noting that a RICO enterprise need not have a leader or hierarchy, there must be some relationship between the participants in the enterprise. *Boyle*, 129 S.Ct. at 2237, 2245. However, the only "relationship" alleged is the customer-supplier relationship between the Insurance Defendants and Mitchell. As noted earlier, the allegations concerning Mitchell's participation in the enterprise are not sufficient.

The Plaintiffs make no allegation that the Insurance Defendants coordinated their efforts or banded together in any way or that corrupt agents within the Insurance Defendants used them to conduct an enterprise. Consequently, the Plaintiffs' allegations state only that the Insurance Defendants conducted their own business using an allegedly fraudulent Ingenix scheme. The

Insurance Defendants, however, cannot simultaneously be both the RICO "person" and the RICO "enterprise." *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 158-59.

The Court concludes that the Plaintiffs have not adequately pleaded an "enterprise" and the Plaintiffs' § 1962(c) claim fails. Because the Plaintiffs' § 1962(d) claim is predicated on their § 1962(c) claim, it too must be dismissed. The Court GRANTS Defendants' Motions to Dismiss Counts III and IV.

IT IS SO ORDERED.

_3/2/14_
Dated

_Wm. J. Hibbler_
Hon. William J. Hibbler
U.S. Dist. Court